WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| David Owens, | CIV 13-8228-PCT-JAT (MHB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

TO THE HONORABLE JAMES A. TEILBORG, UNITED STATES DISTRICT COURT:

Petitioner David Owens, who is confined in the Arizona State Prison Complex-Eyman, Meadows Unit, in Florence, Arizona, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents filed an Answer on February 21, 2014 (Doc. 15), and Petitioner filed his Reply on March 19, 2014 (Doc. 18).

## BACKGROUND[1]

The pre-sentence report provides the following account of the facts:

> An extensive investigation was directed by Detective Tony Ruppel into area home burglaries occurring between June and November 2001, with similar modus operandi: Cutting or removing screens from windows to gain entrance, master bedroom affected only, mostly jewelry taken, nothing rummaged through, little or no latent finger prints, no shoe impressions in the dirt and block walls concealing entry into houses that looked expensive. A search warrant was obtained on November 5, 2001 for the residence of defendant David Owens (38) ... Evidence was gathered during the search linking the

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 15 – Respondents' Answer.

>  defendant to multiple home burglaries in the area. Also found was pornographic material involving children.
>
>  Detective Ramona Tepfer headed up the investigation into the pornographic materials found in the defendant's home. This investigation revealed the defendant had surreptitiously video-taped multiple victims, mainly juvenile females, while they were dressing, playing or sleeping. This videotaping occurred during the same time frame as the burglaries. He had also molested a female juvenile victim by reaching through a window and touching her in the vaginal area while she slept, while he was videotaping at the same time. The defendant's modus operandi in these incidents was to gain entrance into rooms (mainly bedrooms) by cutting or removing screens to windows, using night vision equipment and videotape victims while they were unaware. The defendant was also known to cut pieces of carpet and glue them to the bottoms of his shoes so as to be quieter during both his burglaries and videotaping.

(Exh. V at 2-3.) The pre-sentence report stated Petitioner had committed nine burglaries occurring approximately between July and November of 2001, and that he had stolen property ranging in worth from $3,400 and $25,000. (Id. at 3-4.) The report also listed seven instances between June and November of 2001, in which Petitioner illegally entered homes and unlawfully videotaped six young girls ranging in age from 5 to 14 years old, and one adult female. (Id. at 4.) The report also indicated that Petitioner had sexually molested one of the minor victims while videotaping her. (Id.)

On November 16, 2001, Petitioner was indicted by grand jury with 33 counts in cause number CR-2001-1461, including: 11 counts of second-degree burglary, class 3 felonies (counts 1, 3, 5, 7, 16, 18, 20, 23, 26, 30, 33); six counts of theft, class 3 felonies (counts 2, 4, 6, 8, 9, 12); three counts of first-degree trafficking in stolen property, class 2 felonies (counts 10, 11, 13); 12 counts of unlawful surreptitious videotaping, class 5 felonies (counts 14, 17, 19, 21, 22, 24, 25, 27, 28, 29, 31, 32); and one count of molestation of a child, a class 2 felony (count 15). (Exh. A.) On January 10, 2002, Petitioner was indicted by a grand jury and charged with 19 counts of sexual exploitation of a minor, class 2 felonies, in matter number CR-2002-0051, in connection with child pornography that was found on his computer. (Exh. B.) The State subsequently filed allegations of prior felony convictions, which included: four counts of burglary from 1984 in San Bernardino County, California; seven counts of concealing stolen property also from 1984 in San Bernardino, California; vehicle theft in 1993 in San Diego, California; and lewd and lascivious acts upon a child

under the age of 14 in 1995, in Riverside County, California, which was a dangerous crime against children. (Exh. D.)

During a January 22, 2002 arraignment, Petitioner, who was represented by the Mohave County Public Defender's Office, pleaded not guilty. (Exhs. C, EEE.) On February 5, 2002, Petitioner filed a motion to suppress a number of items obtained during the search of his home, including electronic equipment such as videotapes, cameras, notebooks, CDs, and other computer equipment, claiming that these had been obtained in an unlawful search. (Exh. I.)  The facts surrounding the search of Petitioner's home, as presented in the suppression hearing, were described by the trial court as follows:

> On November 2, 2001, Cerbat Justice of the Peace John Taylor issued a search warrant as requested by the Kingman Police Department. The search warrant was for 2732 Walapai Avenue in Kingman, regarding burglary, theft and trafficking in stolen property investigations of David Owens. There is no dispute that this warrant was valid and issued upon a finding of probable cause by Judge Taylor.
>
> The search team, among others, consisted of Kingman Police Department Officers Anthony Ruppel and Ramona Tepfer and Department of Public Safety Officer David Huerta. Upon entry of the residence at 2732 Walapai, in the course of processing the scene, Officer Ruppel located a photograph of a minor girl dressed in a towel. Officer Ruppel knew this young girl and questioned how such a photograph was in the possession of the defendant. Officer Tepfer found in plain view handwritten notes that, based on her sex and computer crime training and experience, she believed to be child pornography sites. Independent of those findings, Officer Huerta generally from a narcotic detail, found a tape on a VCR and started to play it. Officer Huerta testified that on search warrants with his detail (M.A.G.N.E.T.) that their search warrants typically have language that allow officers to play VCR tapes in VCRs. This procedure was not in the Kingman Police Department search warrant presented to Judge Taylor.
>
> The testimony presented indicated that when these items were found that the search was halted and the premises remained secured by on scene law enforcement. Officer Ruppel took the new information and telephoned the issuing magistrate to expand the search to include items that may have evidence of child pornography such as computers, VCRs, DVDs, floppy disc, mailing lists, photographs and anything to do with pre-teen pornographic websites. This presentation to Judge Taylor was made under oath telephonically from the Kingman Police Department. A transcript of this affidavit was admitted in evidence as Exhibit 4. Judge Taylor did swear in Officer Ruppel and asked him for the State's reasons to expand the search warrant. Officer Ruppel first told Judge Taylor about the handwritten note of possible pornographic websites of preteens, the VCR incident and lastly about the photographs. Judge Taylor asked probative questions which were appropriately responded to by Officer Ruppel. Judge Taylor then stated that he

> gave his permission to conduct the additional search for items specifically set out.
>
> Officer Ruppel returned to the Walapai residence and the search for burglary, theft, trafficking in stolen property and sex crimes against children was conducted. The record reflects that the entire search occurred after Officer Ruppel returned with Judge Taylor's authority to seize items that may contain evidence of sex crimes against children. Officer Ruppel was away from the scene approximately one-half hour. Officer Ruppel had the Kingman Police Department staff transcribe the conversation with Judge Taylor. No one contests the authenticity of this transcription.

(Exh. Q.)

In his motion to suppress, Petitioner argued that the electronic and computer materials were not within the scope of the warrant, and that the State had failed to obtain a new warrant as required by the Fourth Amendment, the Arizona Constitution, and Arizona law. (Exh. I.) The State filed a response on February 15, 2002. (Exh. J.) Petitioner filed a reply on February 21, 2002. (Exh. K.)

On March 5, 2002 the court held an evidentiary hearing on the motion to suppress. (Exhs. L, CCC.) Although attorney Michael Grondin initially represented Petitioner, on the first day of the evidentiary hearing, another attorney from the Mohave County Public Defender's Office, Frank E. Dickey, appeared to represent Petitioner, and did so throughout the hearing. (Exh. CCC.) At the end of the first day, Petitioner had the following exchange with the court concerning the substitution:

> MR. OWENS: It wasn't brought to my attention –
>
> THE COURT: You have the right to remain silent. Anything you say could be used against you.
>
> MR. OWENS: I understand that, Your Honor. I –
>
> MR. DICKEY: Because Mr. Grondin is not here, Your Honor.
>
> MR. OWENS: I don't know, but I am just saying it wasn't brought to my attention. Mr. Grondin assured me that he'd be my lawyer. He also has other information and knowledge concerning this –
>
> THE COURT: Well, I don't know where Mr. Grondin is today or what the activities of the public defender's office attorney, so I am unable to help you with that.
>
> MR. OWENS: I understand that. I just was making a note here that this was not brought to my attention, and Mr. Grondin does have more information me

- 4 -

> and him exchanged and he remains as my attorney. No disrespect to the public defender's and Court for giving –
>
> THE COURT: There's still many opportunities for whatever Mr. Grondin knows to be conveyed, and perhaps you can be back at this continuation of this hearing and I am going to continue this hearing.

(Exh. CCC at 21-22.) The hearing continued on March 14, 2002, at the end of which the court ordered supplemental briefing. (Exh. BBB at 59-60.) On March 22, the State filed a supplemental brief, citing additional authority concerning telephonic search warrants. (Exh. M.)

On March 25, Petitioner moved to substitute his prior attorney Michael Grondin, who was no longer with the public defender's office. (Exh. N.) On April 9, 2002, Mr. Grondin filed a supplemental memorandum on Petitioner's behalf, citing a number of cases concerning the requirement for a written affidavit or warrant, and arguing that the officers lacked good faith, and that the inevitable discovery doctrine did not permit officers to conduct searches without warrants. (Exh. P.)

On April 24, 2002, the court denied Petitioner's motion to suppress. (Exh. Q.) The court held that there did not appear to be an Arizona case directly on point with the issues. (Id.) The court found that once officers found the handwritten notes by the computer of purported child pornography sites, they had probable cause to search for child sex crimes evidence, but needed additional authority to seize those items. (Id.) The officers sought this authority, but failed to obtain a writing as required by A.R.S. § 13-3911. The court concluded, however, that to invalidate the search on this basis would be to exalt form over substance. (Id.) The court found that:

> [T]here is a distinction that may be drawn between the issuance of an original warrant and the expansion of an already issued and signed warrant. In those situations where the privacy interest of an individual has already been breached because of probable cause, it seems that when officers are lawfully in a protected area that the discovery of items in plain view that may be evidence of other criminal activity there is perhaps a lesser reasonable expectation of privacy. Consequently it follows that the appropriate standard to determine the validity of a search warrant that is expanded by evidence of possible new crimes becomes substantial compliance.

1  (Id.) The court pointed out that "Judge Taylor gave specific and unequivocal authority ... to
2  search for items relating to sex crimes against children in the possession of David Owens."
3  (Id.) Citing the case of State v. Morrongiello, 193 Cal. Rpt. 105 (1983), the court held that
4  given that the original warrant lawfully placed law enforcement in the Petitioner's residence,
5  any expansion of the search after obtaining permission from the court should be recognized
6  as proper procedure. (Id.)

7  On May 8, 2002, after the court denied the motion to suppress, Petitioner and the State
8  filed a stipulation to sever counts 14-23 in matter CR-2001-1461 and join them with all
9  counts of the indictment in CR-2002-0051. (Exh. R.)

10  On August 20, 2002, Petitioner entered into a plea agreement, whereby he agreed to
11  plead guilty to five counts of burglary in the second degree, all class 3 felonies, as charged
12  in counts 1, 3, 5, 7 and 12; two counts of trafficking in stolen property in the first degree,
13  class 2 felonies, as charged in counts 10 and 11; and 12 counts of unlawful surreptitious
14  taping, each class 5 felonies, as charged in counts 14, 17, 19, 21, 22, 24, 25, 27, 28, 29, 31
15  and 32. (Exh. T.) As part of the plea agreement, the remaining counts were dismissed. (Id.)

16  The agreement provided that Petitioner would receive a sentence of 7 years in prison
17  for one count of burglary, and 8 years for each of the four remaining burglary counts. (Id.)
18  Petitioner would also receive 10 years for each count of trafficking in stolen property, 3.5
19  years for each of 11 counts of surreptitious taping, and 2.5 years for one count of
20  surreptitious taping. (Id.) Petitioner's sentence totaled 100 years and the State agreed not
21  to prosecute him for any other crime he had committed, other than homicide. (Id.)

22  The agreement stated that Petitioner "shall not have any right to appeal from the
23  judgment or sentence imposed as a result of this stipulated guilty plea." (Id.) The agreement
24  also stated that Petitioner "gives up any and all motions, defenses, objections or requests
25  which he has made or raised, or could assert hereafter, and agrees to the court's entry of
26  judgment against him and imposition of a sentence upon him consistent with the stipulation."
27  (Id.)

28

On August 8, 2002, the court held a change-of-plea hearing. (Exhs. U, AAA.) During the hearing, the court went over the terms of the agreement with Petitioner, including the various counts to which he was pleading guilty, Petitioner's admission to the prior convictions, and the fact that he would be sentenced with one historical prior on each count. (Exh. AAA at 3-5.) The court had the following exchange with Petitioner:

> THE COURT: And is it your signature on the bottom of the third page of this plea agreement?
>
> THE DEFENDANT: Yes, it is.
>
> THE COURT: And did you read the entire agreement before you signed it?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: And has your attorney also explained this agreement to you?
>
> THE DEFENDANT: Yes, sir, Your Honor.
>
> THE COURT: And you understand that by admitting to historical prior conviction that you'll not be eligible for probation on any of these matters?
>
> THE DEFENDANT: Understandable.
>
> THE COURT: Has anybody made any promise to you that's not contained within this indictment?
>
> THE DEFENDANT: No
>
> THE COURT: Or, pardon me, plea agreement.
>
> THE DEFENDANT: No.
>
> THE COURT: Has anybody forced or threatened you in any way to get you to plead guilty to these offenses?
>
> THE DEFENDANT: No, Your Honor. I – I asked for that.
>
> THE COURT: And are you entering into this agreement voluntarily and upon your own free will?
>
> THE DEFENDANT: Yes, I am.
>
> THE COURT: And you understand that for Class 3 felonies with one ... historical prior felony conviction, that your range of sentence is between 4½ years and 23¼ years, with a presumptive term of 9¼ years?
>
> THE DEFENDANT: I understand.

> THE COURT: That for Class 2 – pardon me, that's the Class 2 range. For Class 3 felonies, it's between 3 ½ years and 16¼ years, with a presumptive term of 6 ½ years.
>
> THE DEFENDANT: I understand.
>
> THE COURT: And that for a Class 5 felony, it's between one year and 3¾ years, with a presumptive term of 2¼ years.
>
> THE DEFENDANT: I understand.
>
> THE COURT: And that each sentence may be consecutive to one another?
>
> THE DEFENDANT: Yes.

(Id. at 5-7.) The court noted that Petitioner and the State agreed that he would receive sentences totaling 100 years in prison. (Id. at 8.) The court stated, and the parties agreed, that, pursuant to the agreement, all remaining counts in both cases to which Petitioner was not pleading guilty would be dismissed. (Id. at 8.)

The court discussed the rights Petitioner was giving up, including the right to have a trial and the right to file an appeal. (Id. at 11.) The court also had the following exchange with the Petitioner and prosecutor concerning his waiver of the right to appeal the ruling on the motion to suppress:

> MR. ZACH: ... [Petitioner] also gives up his right to challenge any pretrial rulings by this court, including its ruling on his motion to suppress evidence. He cannot go back and challenge that. That's something he's giving up on appeal, any other pretrial – that's something he's giving up by entering the plea agreement. He also cannot challenge any other ruling of the Court up to this stage.
>
> THE COURT: And you understand that, Mr. Owens, that any pretrial ruling, any motions that the Court may have considered and entered a ruling, you'll lose any right to appeal upon those?
>
> THE DEFENDANT: And I can't challenge those later? I understand that.
>
> THE COURT: You cannot challenge them later, no.
>
> THE DEFENDANT: Understandable.
>
> THE COURT: That's by entering into this agreement.
>
> THE DEFENDANT: So be it.
>
> THE COURT: So you're willing to do that?
>
> MR. GRONDIN: That's as to literally an appeal, not as to a Rule 32, correct?

> THE COURT: There still can be Rule 32. That always exists regardless. But a Rule 32 only reaches whether or not there were any errors in the proceedings, essentially. That would not reach the merits of any ruling the court may have made.
>
> THE DEFENDANT: Understandable.
>
> MR. ZACH: Just be super clear here so there's no argument in the future. Essentially by entering this plea, he's – Defendant should do so with firm understanding that he can never challenge the motion to suppress ruling by this court that was denied. That denial of a motion to suppress will not be brought up in any appellate court. ... And as long as he fully understands that, I just want a clean, clean record –
>
> . . .
>
> So long as the defendant understands that he's giving up that right to challenge the motion to suppress ruling by this court, then the plea can go forward.
>
> THE COURT: And that is your understanding, Mr. Owens?
>
> THE DEFENDANT: Yes, sir, it is my understanding of that.
>
> THE COURT: And do you wish to give up your constitutional rights and any rights that you may have at any pending appeals?
>
> THE DEFENDANT: Yes, I do.

(Id. at 11-14.) After the court told him that his only avenue for appeal would be a Rule 32 petition for post-conviction relief, Petitioner stated "I understand that. I'm not going to file a Rule 32." (Id. at 15.)

Petitioner pleaded guilty to all charges specified in the agreement. (Id. at 17-19; 10-11; 24-28.) The court asked Petitioner whether he had committed each of the burglaries with which he was charged, and Petitioner admitted that he did. (Id. at 20-11.) The court also asked Petitioner whether he had engaged in trafficking stolen property as provided in the indictment, and Petitioner admitted that he did. (Id. 23-28.) Petitioner's counsel provided the following factual basis to support his guilty plea to the surreptitious videotaping charges, stating:

> Pretty much in each case, the defendant went out almost invariably at night, dressed in dark clothing, with anything shiny kind of muted, and with night vision scopes and videotape recorders approached homes that he had sort of scoped out beforehand, and would go up to individual homes and I think frequently physically invert the lens into the room and make these videotapes of basically children in various states of undress.

1  (Id. at 28-29.) The prosecutor added that the video recordings had been found in Petitioner's
2  home and that the children were videotaped in their bedrooms or bathrooms, without consent.
3  (Id. at 29-30.) Petitioner admitted to each of the instances of surreptitious videotaping. (Id.
4  at 30-38.)  Petitioner also admitted to the prior convictions alleged by the State. (Id. at
5  38-42.)

6  Petitioner told the court that he had "personally asked for" the sentence in the plea
7  agreement, and said he "understood what [he] was giving up," stating that he was "asking
8  for the rest of [his] life in prison." (Id. at 13-14.) The State subsequently added, that it was
9  convinced that this was an intelligent, knowing and voluntary plea, adding that Petitioner's
10 counsel had come forward and "said the defendant did want to go to prison for the rest of his
11 life to make things right with the victims and in his own mind." (Id. at 44.) The court found
12 that Petitioner had "knowingly, intelligently, and voluntarily entered into each plea and
13 admission of prior felony convictions," that "[t]here are factual bases for each crime," and
14 accepted the plea. (Id. at 48-49.)

15 The court sentenced Petitioner on September 12, 2002. (Exhs. Y, ZZ.) During the
16 hearing, Petitioner's counsel stated:

> I know that Mr. Owens would wish it to be known that at the time that he entered into the plea agreement it wasn't out of a feeling that the result here was inevitable, it was the feeling that he ought to own up to and pay the price for what he had done because he feels that what he had done was wrong and he should pay for it.

20 (Exh. ZZ at 6.) Petitioner then stated that he had been a good man, but that he "got into
21 meth." (Id. at 7.) He stated: "When you're on that drug, it's very powerful and it's
22 incredibly evil and it makes people do evil, crazy stuff that I am so ashamed of." (Id.)
23 Petitioner stated that he "deserve[d] life," adding that "I did some really wicked stuff that I'm
24 really ashamed of. Please forgive me. I asked [the prosecutor] to give me 100 years ... ." (Id.)

25 The court found that Petitioner's prior convictions, the charges that were dismissed,
26 the amount of loss suffered by the victims, and the financial and emotional harm to the
27 victims were aggravating factors. (Id. at 11-20.) The court found no mitigating factors. The
28 court imposed the following sentences: an aggravated term of 7 years' imprisonment for one

- 10 -

of the second-degree burglary convictions (count 1); aggravated terms of 8 years' imprisonment for each of the four additional second-degree burglary convictions (counts 3, 5, 7, 12); aggravated terms of 10 years' imprisonment for each of the two first-degree trafficking in stolen property convictions (counts 10 and 11); aggravated terms of 3.75 years' imprisonment for 11 unlawful surreptitious taping convictions (counts 14, 19, 21, 22, 24, 25, 27, 28, 29, 31 and 32); and an aggravated term of 2.75 years' imprisonment for one unlawful surreptitious taping conviction (count 17). (Exhs. Y, ZZ at 11-20.) All were non-dangerous, but repetitive offenses pursuant to A.R.S. § 13-604. (Id. at 4.) All sentences were consecutive and added up to 100 years. (Id. at 22.)

On May 5, 2005, Petitioner filed a notice of Rule 32 post-conviction relief. (Exh. Z.) Petitioner alleged that:

> A computer and videotapes were not discribed [sic] in the search warrant. Constitution of the [U]nited States of America Amendment (4) the right of the people to be secure in their persons, house papers, and effects against unreasonable searches and seizures shall not be violated, and no warrants shall issue but upon probable cause, supported oath or affirmation and particularly describing the place to be searched and the persons or things to be seized. A.R.S. 13-4037[.]

Petitioner also stated: "power of Supreme Court to correct and reduce sentence upon appeal by defendant. Unreasonable sentence." (Id.) Petitioner also made the following allegation:

> Ineffective counsel, who should of [sic] filed a special action my appointed counsel Michael R. Grondin #020828 was on drugs (meth) at the time of my case and was shortly thereafter convicted of drug use and theft. Also should of [sic] filed any direct appeals and post-verdict proceedings Rule 24.2(a)(3) and 24.3[.]

(Id.)

On July 11, 2005, the court noted that Petitioner's PCR notice was untimely. The court stated that Petitioner had alleged grounds that might allow for a late filing, but found that Petitioner had "not sufficiently presented the substance of any specific exemption and/or any reasons for not raising these claims in a timely petition," citing Rule 32.2(b) of the Arizona Rules of Criminal Procedure. (Exh. AA.) The court thus summarily dismissed the notice of post-conviction relief. (Id.)

Petitioner filed a motion for reconsideration, which the court denied on October 3, 2005, stating that Petitioner did "not make any argument as to why the prior ruling was incorrect." (Exhs. BB, CC.) The court also treated the motion for reconsideration as a successive PCR petition, but found that Petitioner had not complied with Rules 32.1, 32.2 and 32.5 of the Arizona Rules of Criminal Procedure. The court gave Petitioner 30 days to refile any successive PCR petition. (Exh. CC.)

After obtaining a number of extensions from the court (Exhs. DD-HH), Petitioner filed a PCR petition on February 21, 2006. (Exh. II.) In his petition, he argued that he fell under the exception in Rule 32.1 because the failure to file in time was without fault on his part. (Id. at 4.) Petitioner explained that he reasonably believed his lawyer had been working on his appeal, but had discovered he was not, when he made an inquiry with the State Bar after not hearing from his lawyer, and learned his lawyer had been suspended from the practice of law for 3 years. Petitioner attached as an exhibit to the petition a letter from the Arizona State Bar stating that on October 29, 2004, Michael Grondin was suspended from the practice of law for 3 years, and would be placed on probation for 2 years upon reinstatement. (Id.) The letter also stated that Mr. Grondin was ordered to pay $12,721.90 in restitution to the Yavapai Public Defender's Office, and the Mohave County Superior Court. The letter described Mr. Grondin's misconduct as follows:

> Mr. Grondin's misconduct included failing to abide by his client's decisions concerning the objectives of representation or to consult with his client as to the means by which they are to be pursued; failing to act with reasonable diligence and promptness in representing a client; failing to keep his client reasonably informed about the status of a matter or promptly comply with reasonable requests for information; failing, upon termination of representation, to take steps reasonably practicable to protect his client's interests; failing to make reasonable efforts to expedite litigation consistent with his client's interests; committing a criminal act that reflects adversely on his honesty, trustworthiness or fitness as a lawyer, engaging in conduct prejudicial to the administration of justice; and being convicted of a misdemeanor involving a serious crime.

(Id.) The letter also stated that two aggravating factors were found: multiple offenses and illegal conduct including that involving the use of controlled substances. (Id.) The letter also noted the following mitigating factors were found: absence of a prior disciplinary record;

absence of a dishonest or selfish motive; personal or emotional problems; full and free disclosure to the disciplinary board or cooperative attitude toward the proceedings; inexperience in the practice of law; and remorse. (Id.)

Petitioner also asserted the following claims:

– Sixth Amendment claim of ineffective assistance of counsel: Petitioner claimed that "a reasonable inference can be made that Mr. Grondin was actually using illegal drugs and committing serious crimes while he represented Petitioner." (Id. at 7.) He claimed that a conflict existed at the time Mr. Grondin was representing Petitioner as the lawyer had no right by law to represent him and was only able to do so by concealing his drug use and crimes. Petitioner claimed he was denied his right to submit a motion to change counsel based on the fact that the attorney was using illegal drugs and committing serious crimes prior to Petitioner's entering into the plea agreement, which violated his right to counsel and his right to competent counsel under the Sixth Amendment. Petitioner claimed that if the misconduct had come to light at the time counsel was representing him, the court would have been obligated to change counsel. Petitioner claimed that the plea must be voided, the conviction and sentence reversed, and new counsel appointed. (Id. at 8-9.)

– Involuntary Plea: Petitioner also claimed that his plea was void because it was involuntary. (Id. at 9.) Petitioner claimed that prior to entering into the plea, his lawyer had told him that a motion to suppress all sexual offense evidence, based on a Fourth Amendment search and seizure violation, had been denied. Petitioner claimed he had been told that if the motion was granted, the State would offer a plea of 10-15 years based on the burglary, trafficking, and theft counts. (Id.) Petitioner claimed that his lawyer lied to him as "no motion to suppress based on a 4th Amendment violation was submitted." (Id.) Petitioner claimed this was done "in order to induce petitioner to enter into the plea agreement concerning both cases." Petitioner claimed that, at sentencing, his lawyer admitted that no such motion was actually submitted and denied. Petitioner claims that had his lawyer told him that the motion to suppress was not submitted and denied, he "would not have entered into the plea agreement and would have gone forward to trial." (Id. at 11.)

– Fourth Amendment: Petitioner claimed that "prejudice must be found" because the underlying Fourth Amendment violation claim is meritorious and had it been submitted, would have required this Court to suppress all the sexual offense evidence and dismiss the charges in case # CR 2002-0051. Petitioner claimed that the record was clear that the police did not obtain a warrant to search and seize the videotape and computer disk evidence the State obtained until after the search and seizure took place, so that all the evidence obtained by the State to prove he committed the crimes charged under case # CR 2002-0051 was obtained in violation of petitioner's rights against an unconstitutional search and seizure. (Id.)

On March 6, 2006, the court noted that the PCR petition was "presumptively untimely." (Exh. JJ.) The court however, found that "the Defendant has met his burden setting forth reasons for [his] untimely filing" and noted that Petitioner "had previously requested an attorney." (Id.) The court appointed Jill Evans from the public defender's office, and attorney Gail Natale was eventually substituted to represent Petitioner. (Id.; Exhs.

1  KK, LL.) After reviewing the record, Ms. Natale informed the court on December 20, 2006,
2  that she was "unable to find any claims for relief to raise in post-conviction proceedings,"
3  and that she, therefore, had no supplement to Petitioner's PCR petition. (Exh. MM.) The
4  court subsequently issued an order allowing Petitioner to file a successive PCR petition.
5  (Exh. PP.)

6        Petitioner filed a series of motions asking the court for records and for additional time
7  to file a successive PCR petition. (Exhs. QQ-XX.) The court granted these motions, but
8  Petitioner never filed a supplemental petition. (Id.; Exh. YY.) On December 12, 2007, the
9  court noted that Petitioner had been given time to file any pro per supplemental petition, but
10 failed to do so. The court determined that:

> Upon review of the file, the Court has determined that no remaining claim presents a material issue of fact or law which would entitle the defendant to relief under this rule, and no further purpose would be served by any further proceedings.

(Exh. YY.) The court thus "dismissed the petition for post-conviction relief in its entirety."
(Id.) Petitioner did not file a petition for review.

      On September 13, 2013, Petitioner filed the instant habeas petition in this Court.
(Doc. 1.) Petitioner raises four grounds for relief. In Ground One, Petitioner alleges that his
counsel was ineffective in failing to keep Petitioner informed of his case and giving him
misleading information, which led to Petitioner's acceptance of a "bad plea deal." In Ground
Two, Petitioner alleges that his Fourth Amendment right to be free from illegal search and
seizure was violated when officers seized computer disks and tapes from Petitioner's home
without a search warrant. In Ground Three, Petitioner alleges that his Eighth Amendment
protection from cruel and unusual punishment was violated when his incompetent counsel
entered into a "cruel and unusual plea deal." In Ground Four, Petitioner alleges that his
post-conviction relief counsel was ineffective.

\\\
\\\
\\\

**DISCUSSION**

In their Answer, Respondents contend that Petitioner's habeas petition is untimely and, as such, must be denied and dismissed.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. See 28 U.S.C. § 2244(d)(1). The statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

An "of-right" petition for post-conviction review under Arizona Rule of Criminal Procedure 32, which is available to criminal defendants who plead guilty, is a form of "direct review" within the meaning of 28 U.S.C. § 2244(d)(1)(A). See Summers v. Schriro, 481 F.3d 710, 711 (9th Cir. 2007). Therefore, the judgment of conviction becomes final upon the conclusion of the Rule 32 of-right proceeding, or upon the expiration of the time for seeking such review. See id.

Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2); see Lott v. Mueller, 304 F.3d 918, 921 (9th Cir. 2002). A post-conviction petition is "clearly pending after it is filed with a state court, but before that court grants or denies the petition." Chavis v. Lemarque, 382 F.3d 921, 925 (9th Cir. 2004). A state petition that is not filed, however, within the state's required time limit is not "properly filed" and, therefore, the petitioner is

1  not entitled to statutory tolling. See Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005). "When
2  a postconviction petition is untimely under state law, 'that [is] the end of the matter'" for
3  purposes of § 2244(d)(2)." Id. at 414.

4        In Arizona, post-conviction review is pending once a notice of post-conviction relief
5  is filed even though the petition is not filed until later. See Isley v. Arizona Department of
6  Corrections, 383 F.3d 1054, 1056 (9th Cir. 2004). An application for post-conviction relief
7  is also pending during the intervals between a lower court decision and a review by a higher
8  court. See Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003) (citing Carey v. Saffold,
9  536 U.S. 214, 223 (2002)). However, the time between a first and second application for
10 post-conviction relief is not tolled because no application is "pending" during that period.
11 See id. Moreover, filing a new petition for post-conviction relief does not reinitiate a
12 limitations period that ended before the new petition was filed. See Ferguson v. Palmateer,
13 321 F.3d 820, 823 (9th Cir. 2003).

14       The statute of limitations under the AEDPA is subject to equitable tolling in
15 appropriate cases. See Holland v. Florida, 560 U.S. 631, 645-46 (2010). However, for
16 equitable tolling to apply, a petitioner must show "'(1) that he has been pursuing his rights
17 diligently and (2) that some extraordinary circumstances stood in his way'" and prevented
18 him from filing a timely petition. Id. at 2562 (quoting Pace, 544 U.S. at 418).

19       The Court finds that Petitioner's Petition for Writ of Habeas Corpus is untimely.
20 Petitioner was sentenced under the plea agreement on September 12, 2002. (Exhs. Y, ZZ.)
21 By pleading guilty, Petitioner waived his right to a direct appeal. Petitioner had 90 days to
22 file an "of-right" petition for post-conviction relief under Rule 32 of the Arizona Rules of
23 Criminal Procedure. Because Petitioner failed to file such a petition within the prescribed
24 time, the judgment became final for statute of limitations purposes when the 90-day period
25 expired, on December 11, 2002, and the limitations period began to run on that date. See 28
26 U.S.C. § 2244(d)(1)(A); Summers, 481 F.3d at 711. The statute of limitations expired one
27 year later on December 11, 2003.

28

By the time Petitioner filed his untimely notice of post-conviction relief on May 5, 2005, the AEDPA statute of limitations had already expired. (Exhs. Z, AA.) Filing a petition for post-conviction relief does not reinitiate a limitations period that ended before the petition was filed. See Ferguson, 321 F.3d at 823 ("Like the Eleventh Circuit, we hold that section 2244(d) does not permit the re-initiation of the [federal 1-year] limitations period that has ended before the state petition was filed."); see also Pace, 544 U.S. at 413-14 ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2).").

Similarly, Petitioner's subsequent successive state court pleadings did not toll the limitations period. These pleadings were also filed after the statute of limitations ended and could not restart the expired 1-year limitations period. See Ferguson, 321 F.3d at 823. In sum, Petitioner filed the instant habeas petition almost 10 years after the 1-year limitations period expired. The Petition is therefore untimely.

The Ninth Circuit recognizes that the AEDPA's limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar. See Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other grounds by Calderon v. United States Dist. Ct. (Kelly), 163 F.3d 530, 540 (9th Cir. 1998). Tolling is appropriate when "'extraordinary circumstances' beyond a [petitioner's] control make it impossible to file a petition on time." Id.; see Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (stating that "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule") (citations omitted). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). A petitioner seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace, 544 U.S. at 418. Petitioner must also establish a "causal connection" between the extraordinary circumstance and his failure to file

1  a timely petition.  See Bryant v. Arizona Attorney General, 499 F.3d 1056, 1060 (9th Cir.
2  2007).

3        Petitioner has not proffered any extraordinary circumstance that would justify
4  equitable tolling or demonstrated that an external impediment hindered the diligent pursuit
5  of his rights.  Petitioner's *pro se* status, indigence, limited legal resources, ignorance of the
6  law, or lack of representation during the applicable filing period do not constitute
7  extraordinary circumstances justifying equitable tolling.  See, e.g., Rasberry v. Garcia, 448
8  F.3d 1150, 1154 (9th Cir. 2006) ("[A] *pro se* petitioner's lack of legal sophistication is not,
9  by itself, an extraordinary circumstance warranting equitable tolling.").  Petitioner has
10 demonstrated his ability to pursue post-conviction relief by filing a *pro se* Rule 32 petition,
11 as well as numerous related motions in state court.

12       To the extent that Petitioner could argue that the state court ultimately considered his
13 "presumptively untimely" successive PCR petition based on his allegation that he believed
14 his lawyer was working on his appeal, this does not excuse his untimely federal habeas
15 petition.  The state court denied the Rule 32 petition on December 12, 2007, noting that
16 Petitioner had been given time to file a supplemental petition, but failed to do so.  The court
17 concluded that no remaining claim presents a material issue of fact or law which would
18 entitle Petitioner to relief, and that no further purpose would be served by any further
19 proceedings.  (Exh. YY.)  The court thus "dismissed the petition for post-conviction relief
20 in its entirety."  (Id.)  Petitioner did not file a petition for review.

21       Petitioner did not file his federal habeas petition until September 13, 2013 – over five
22 years later.  Thus, even if Petitioner's belief that counsel was working on his appeal could
23 somehow toll the statute of limitations until the court denied his untimely PCR petition, this
24 would not excuse over five years he waited thereafter to file his federal habeas petition.  See
25 Pace, 544 U.S. at 418.

26       Accordingly, Petitioner is not entitled to equitable tolling and his habeas petition is
27 untimely.
28

**CONCLUSION**

Having determined that Petitioner's habeas petition is untimely, the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 27th day of June, 2014.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge