WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Owens,<br><br>               Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>               Respondents. | No. CV 13-8228-PCT-JAT |

Pending before this Court is Petitioner's Petition for Writ of Habeas Corpus ("Petition") (Doc. 1). The Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the Petition be denied and dismissed because it is barred by the Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") statute of limitations. (Doc. 20 at 19). The R&R further recommended that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be denied. (*Id.*)

**I.  REVIEW OF AN R&R**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). District courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also* 28 U.S.C. § 636(b)(1) ("the court shall make a de novo

1 determination of those portions of the [report and recommendation] to which an objection
2 is made."). In this case, Petitioner filed objections to the R&R (Doc. 23), and the Court
3 will review these objections de novo.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The R&R summarized the factual and procedural history of the case and neither party objected to this history. (Doc. 23 at 1–15). Therefore, the Court adopts that portion of the R&R in this case. The relevant portion of the factual and procedural background is included below.

> On November 16, 2001, Petitioner was indicted by grand jury with 33 counts in cause number CR-2001-1461, including: 11 counts of second-degree burglary, class 3 felonies (counts 1, 3, 5, 7, 16, 18, 20, 23, 26, 30, 33); six counts of theft, class 3 felonies (counts 2, 4, 6, 8, 9, 12); three counts of first-degree trafficking in stolen property, class 2 felonies (counts 10, 11, 13); 12 counts of unlawful surreptitious videotaping, class 5 felonies (counts 14, 17, 19, 21, 22, 24, 25, 27, 28, 29, 31, 32); and one count of molestation of a child, a class 2 felony (count 15). (Exh. A.) On January 10, 2002, Petitioner was indicted by a grand jury and charged with 19 counts of sexual exploitation of a minor, class 2 felonies, in matter number CR-2002-0051, in connection with child pornography that was found on his computer. (Exh. B.) . . . .
>
> On August 20, 2002, Petitioner entered into a plea agreement, whereby he agreed to plead guilty to five counts of burglary in the second degree, all class 3 felonies, as charged in counts 1, 3, 5, 7 and 12; two counts of trafficking in stolen property in the first degree, class 2 felonies, as charged in counts 10 and 11; and 12 counts of unlawful surreptitious taping, each class 5 felonies, as charged in counts 14, 17, 19, 21, 22, 24, 25, 27, 28, 29, 31 and 32. (Exh. T.) As part of the plea agreement, the remaining counts were dismissed. (*Id.*)
>
> The agreement provided that Petitioner would receive a sentence of 7 years in prison for one count of burglary, and 8 years for each of the four remaining burglary counts. (*Id.*) Petitioner would also receive 10 years for each count of trafficking in stolen property, 3.5 years for each of 11 counts of surreptitious taping, and 2.5 years for one count of surreptitious taping. (*Id.*) Petitioner's sentence totaled 100 years and the State agreed not to prosecute him for any other crime he had committed, other than homicide. (*Id.*)
>
> The agreement stated that Petitioner "shall not have any right to appeal from the judgment or sentence imposed as a result of this stipulated guilty plea." (*Id.*) The agreement also stated that Petitioner "gives up any and all motions, defenses, objections or requests which he has made or raised, or could assert hereafter, and agrees to the court's entry of judgment against him and imposition of a sentence upon him consistent with the stipulation." (*Id.*)
>
> On August 8, 2002, the court held a change-of-plea hearing. (Exhs. U, AAA.) During the hearing, the court went over the terms of the

agreement with Petitioner, including the various counts to which he was pleading guilty, Petitioner's admission to the prior convictions, and the fact that he would be sentenced with one historical prior on each count . . . . (Exh. AAA at 3–5.)

After the court told him that his only avenue for appeal would be a Rule 32 petition for post-conviction relief, Petitioner stated "I understand that. I'm not going to file a Rule 32." (*Id.* at 15.)

Petitioner pleaded guilty to all charges specified in the agreement. (*Id.* at 17–19; 10–11; 24–28.) The court asked Petitioner whether he had committed each of the burglaries with which he was charged, and Petitioner admitted that he did. (*Id.* at 20–11.) The court also asked Petitioner whether he had engaged in trafficking stolen property as provided in the indictment, and Petitioner admitted that he did . . . . (*Id.* 23–28.)

The court found that Petitioner had "knowingly, intelligently, and voluntarily entered into each plea and admission of prior felony convictions," that "[t]here are factual bases for each crime," and accepted the plea. (*Id.* at 48–49.)

The court sentenced Petitioner on September 12, 2002. (Exhs. Y, ZZ.) . . .

The court found no mitigating factors . . . . All sentences were consecutive and added up to 100 years. (*Id.* at 22.)

On May 5, 2005, Petitioner filed a notice of Rule 32 post-conviction relief. (Exh. Z.) Petitioner alleged that:

> A computer and videotapes were not discribed [sic] in the search warrant. Constitution of the [U]nited States of America Amendment (4) the right of the people to be secure in their persons, house papers, and effects against unreasonable searches and seizures shall not be violated, and no warrants shall issue but upon probable cause, supported oath or affirmation and particularly describing the place to be searched and the persons or things to be seized. A.R.S. 13-4037[.]

Petitioner also stated: "power of Supreme Court to correct and reduce sentence upon appeal by defendant. Unreasonable sentence." (*Id.*) Petitioner also made the following allegation:

> Ineffective counsel, who should of [sic] filed a special action my appointed counsel Michael R. Grondin #020828 was on drugs (meth) at the time of my case and was shortly thereafter convicted of drug use and theft. Also should of [sic] filed any direct appeals and post-verdict proceedings Rule 24.2(a)(3) and 24.3[.] (*Id.*)

On July 11, 2005, the court noted that Petitioner's PCR notice was untimely. The court stated that Petitioner had alleged grounds that might allow for a late filing, but found that Petitioner had "not sufficiently presented the substance of any specific exemption and/or any reasons for not raising these claims in a timely petition," citing Rule 32.2(b) of the

>Arizona Rules of Criminal Procedure. (Exh. AA.) The court thus summarily dismissed the notice of post-conviction relief. (*Id.*)
>
>Petitioner filed a motion for reconsideration, which the court denied on October 3, 2005, stating that Petitioner did "not make any argument as to why the prior ruling was incorrect." (Exhs. BB, CC.) The court also treated the motion for reconsideration as a successive PCR petition, but found that Petitioner had not complied with Rules 32.1, 32.2 and 32.5 of the Arizona Rules of Criminal Procedure. The court gave Petitioner 30 days to refile any successive PCR petition. (Exh. CC.)
>
>After obtaining a number of extensions from the court (Exhs. DD-HH), Petitioner filed a PCR petition on February 21, 2006. (Exh. II.) In his petition, he argued that he fell under the exception in Rule 32.1 because the failure to file in time was without fault on his part. (*Id.* at 4.) Petitioner explained that he reasonably believed his lawyer had been working on his appeal, but had discovered he was not, when he made an inquiry with the State Bar after not hearing from his lawyer, and learned his lawyer had been suspended from the practice of law for 3 years. Petitioner attached as an exhibit to the petition a letter from the Arizona State Bar stating that on October 29, 2004, Michael Grondin was suspended from the practice of law for 3 years, and would be placed on probation for 2 years upon reinstatement. (*Id.*) The letter also stated that Mr. Grondin was ordered to pay $12,721.90 in restitution to the Yavapai Public Defender's Office, and the Mohave County Superior Court. The letter described Mr. Grondin's misconduct as follows:
>
>>Mr. Grondin's misconduct included failing to abide by his client's decisions concerning the objectives of representation or to consult with his client as to the means by which they are to be pursued; failing to act with reasonable diligence and promptness in representing a client; failing to keep his client reasonably informed about the status of a matter or promptly comply with reasonable requests for information; failing, upon termination of representation, to take steps reasonably practicable to protect his client's interests; failing to make reasonable efforts to expedite litigation consistent with his client's interests; committing a criminal act that reflects adversely on his honesty, trustworthiness or fitness as a lawyer, engaging in conduct prejudicial to the administration of justice; and being convicted of a misdemeanor involving a serious crime.
>
>(*Id.*) The letter also stated that two aggravating factors were found: multiple offenses and illegal conduct including that involving the use of controlled substances. (*Id.*)

(Doc. 20 at 1–12).

The Magistrate Judge notes that Petitioner also asserted the following claims:

>– Sixth Amendment claim of ineffective assistance of counsel: Petitioner claimed that "a reasonable inference can be made that Mr. Grondin was actually using illegal drugs and committing serious crimes while he represented Petitioner." (*Id.* at 7.) He claimed that a conflict existed at the time Mr. Grondin was representing Petitioner as the lawyer had no right by

- 4 -

law to represent him and was only able to do so by concealing his drug use and crimes. Petitioner claimed he was denied his right to submit a motion to change counsel based on the fact that the attorney was using illegal drugs and committing serious crimes prior to Petitioner's entering into the plea agreement, which violated his right to counsel and his right to competent counsel under the Sixth Amendment. Petitioner claimed that if the misconduct had come to light at the time counsel was representing him, the court would have been obligated to change counsel. Petitioner claimed that the plea must be voided, the conviction and sentence reversed, and new counsel appointed. (*Id.* at 8–9.)

– Involuntary Plea: Petitioner also claimed that his plea was void because it was involuntary. (*Id.* at 9.) Petitioner claimed that prior to entering into the plea, his lawyer had told him that a motion to suppress all sexual offense evidence, based on a Fourth Amendment search and seizure violation, had been denied. Petitioner claimed he had been told that if the motion was granted, the State would offer a plea of 10-15 years based on the burglary, trafficking, and theft counts. (*Id.*) Petitioner claimed that his lawyer lied to him as "no motion to suppress based on a 4th Amendment violation was submitted." (*Id.*) Petitioner claimed this was done "in order to induce petitioner to enter into the plea agreement concerning both cases." Petitioner claimed that, at sentencing, his lawyer admitted that no such motion was actually submitted and denied. Petitioner claims that had his lawyer told him that the motion to suppress was not submitted and denied, he "would not have entered into the plea agreement and would have gone forward to trial." (*Id.* at 11.)

– Fourth Amendment: Petitioner claimed that "prejudice must be found" because the underlying Fourth Amendment violation claim is meritorious and had it been submitted, would have required this Court to suppress all the sexual offense evidence and dismiss the charges in case # CR 2002-0051. Petitioner claimed that the record was clear that the police did not obtain a warrant to search and seize the videotape and computer disk evidence the State obtained until after the search and seizure took place, so that all the evidence obtained by the State to prove he committed the crimes charged under case # CR 2002-0051 was obtained in violation of petitioner's rights against an unconstitutional search and seizure. (*Id.*) . . .

    On March 6, 2006, the court noted that the PCR petition was "presumptively untimely." (Exh. JJ.) The court however, found that "the Defendant has met his burden setting forth reasons for [his] untimely filing" and noted that Petitioner "had previously requested an attorney." (*Id.*) The court appointed Jill Evans from the public defender's office, and attorney Gail Natale was eventually substituted to represent Petitioner. (*Id.*; Exhs. KK, LL.) After reviewing the record, Ms. Natale informed the court on December 20, 2006, that she was "unable to find any claims for relief to raise in post-conviction proceedings," and that she, therefore, had no supplement to Petitioner's PCR petition. (Exh. MM.) The court subsequently issued an order allowing Petitioner to file a successive PCR petition. (Exh. PP.)

    Petitioner filed a series of motions asking the court for records and for additional time to file a successive PCR petition. (Exhs. QQ-XX.) The court granted these motions, but Petitioner never filed a supplemental petition. (*Id.*; Exh. YY.) On December 12, 2007, the court noted that Petitioner had been given time to file any pro per supplemental petition, but

- 5 -

failed to do so. The court determined that:

> Upon review of the file, the Court has determined that no remaining claim presents a material issue of fact or law which would entitle the defendant to relief under this rule, and no further purpose would be served by any further proceedings.

(Exh. YY.) The court thus "dismissed the petition for post-conviction relief in its entirety." (*Id.*) Petitioner did not file a petition for review.

On September 13, 2013, Petitioner filed the instant habeas petition in this Court. (Doc. 1.) Petitioner raises four grounds for relief. In Ground One, Petitioner alleges that his counsel was ineffective in failing to keep Petitioner informed of his case and giving him misleading information, which led to Petitioner's acceptance of a "bad plea deal." In Ground Two, Petitioner alleges that his Fourth Amendment right to be free from illegal search and seizure was violated when officers seized computer disks and tapes from Petitioner's home without a search warrant. In Ground Three, Petitioner alleges that his Eighth Amendment protection from cruel and unusual punishment was violated when his incompetent counsel entered into a "cruel and unusual plea deal." In Ground Four, Petitioner alleges that his post-conviction relief counsel was ineffective.

(Doc. 20 at 12–14).

## III. R&R

On June 27, 2014, the Magistrate Judge issued an R&R recommending that the Petition be denied as barred by the AEDPA's statute of limitations. (Doc. 20 at 16–19). As explained by the Magistrate Judge, the AEDPA provides a one-year statute of limitations for state prisoners to file a petition for writ of habeas corpus in federal court. (*Id.* at 15 (citing 28 U.S.C. § 2244(d)(1))). That period generally commences on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). After examining Petitioner's procedural history in state court, the Magistrate Judge determined that Petitioner's conviction became final on December 11, 2002, 90 days after Petitioner was sentenced under the plea agreement. (Doc. 20 at 16). The Magistrate Judge concluded that the statute of limitations expired one year later on December 11, 2003. (*Id.*) Petitioner filed an untimely notice of post-conviction relief in state court on May 5, 2005 (Doc. 20 Ex. Z), and the instant habeas petition on September 13, 2013. (Doc. 1).

Beginning with statutory tolling, the Magistrate Judge explained that the AEDPA's one-year limitations period is tolled during the time that a "properly filed

- 6 -

application for a state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." (*Id.* at 15 (quoting 28 U.S.C. § 2244(d)(2))). However, a petition for post-conviction relief that is not filed within the state's required time limit is not properly filed. (*Id.* at 15 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005)). Moreover, filing a petition for post-conviction relief does not restart a limitations period that ended before the petition was filed and does not toll the statute of limitations. (Doc. 20 at 17). Accordingly, the Magistrate Judge concluded that Petitioner's post-conviction relief petition did not restart the limitations period or toll it. (*Id.*) Similarly, Petitioner's later state court pleadings did not restart or toll the limitations period either because they were also filed after the statute of limitations expired. (*Id.*) Consequently, the Magistrate Judge found Petitioner's instant habeas petition untimely because Petitioner filed it nearly 10 years after the limitations period expired. (*Id.*)

Turning to equitable tolling, the Magistrate Judge explained that a petitioner is entitled to equitable tolling if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." (*Id.* (quoting *Pace*, 544 U.S. at 418)). Moreover, a petitioner "must also establish a 'causal connection' between the extraordinary circumstance and his failure to file a timely petition." (*Id.* (citing *Bryant v. Ariz. Attorney Gen.*, 499 F.3d 1056, 1060 (9th Cir. 2007))). The Magistrate Judge determined that Petitioner did not "proffer[] any extraordinary circumstance that would justify equitable tolling or demonstrate[] that an external impediment hindered the diligent pursuit of his rights." (*Id.* at 18).

**IV.    PETITIONER'S OBJECTIONS**

Petitioner does not object to the Magistrate Judge's application of the AEDPA's statute of limitations to his procedural history and the Court adopts those recommendations. Instead Petitioner objects to the R&R by arguing that the AEDPA's statute of limitations does not apply to his case because he is entitled to equitable tolling. (Doc. 23 at 5). Petitioner raises two arguments in favor of equitable tolling. (*Id.* at 5–6). First he asserts that his trial attorney provided ineffective assistance of counsel which

"induced" him to plead guilty. (*Id.* at 5). He claims the recent Supreme Court cases, *Lafler v. Cooper*, 132 S.Ct. 1367 (2012), and *Missouri v. Frye*, 132 S.Ct. 1399 (2012), extended the Sixth Amendment right to counsel to negotiating plea deals and therefore, justify equitable tolling in his case. (*Id.*) Second, Petitioner argues that the recently decided Supreme Court cases, *Holland v. Florida*, 560 U.S. 631 (2010) and *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), permit the equitable tolling when a plaintiff's post-conviction counsel is ineffective. (*Id.* at 6). He asserts that his post-conviction counsel was ineffective because she "fought against him" and he is therefore entitled to equitable tolling under *Holland* and *Martinez*. (*Id.*)

Petitioner is entitled to equitable tolling if he shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Pace*, 544 U.S. at 418.

Petitioner also raises several constitutional arguments in his objections to the R&R. First, he contends that his Fourth Amendment rights were violated when police allegedly conducted an unlawful search and seizure of his property. (*Id.* at 3). Second, Petitioner argues that his Sixth Amendment right to counsel was violated because his trial counsel was ineffective due to a methamphetamine addiction. (*Id.* at 2).

### A.     The Constitutional Right to Counsel during a Plea Negotiation

Petitioner asserts that his trial counsel, Michael Grondin, provided ineffective assistance of counsel which "induced" Petitioner to plead guilty. (Doc. 23 at 6). He argues that the recent Supreme Court cases *Lafler* and *Frye* create a constitutional right to counsel during plea deal negotiations. (*Id.*) Petitioner contends that he is entitled to equitable tolling because his constitutional right, created by these two cases, was violated by Grondin's ineffective assistance of counsel, evidenced by his methamphetamine addiction, during Petitioner's plea negotiation. (*Id.*)

The right to counsel during plea deal negotiations is not a new concept. The Sixth Amendment entitles criminal defendants to counsel during "critical stages" of a criminal proceeding. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (quoting *United States v.*

*Wade*, 388 U.S. 218, 227–228 (1967)). The Supreme Court recognized that the negotiation of a plea deal is a "critical stage" in which criminal defendants are entitled to counsel in 1963 and the Court has consistently adhered to that position. *White v. Maryland*, 373 U.S. 59, 60 (1963) (per curiam); *see also Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972). *Lafler* and *Frye* extend the claim of ineffective assistance of counsel to certain situations where a defendant does not accept a plea deal, but neither case applies to Petitioner.

In *Lafler*, the defense counsel gave inaccurate legal advice causing the defendant to reject a plea deal that was more favorable than the sentence he received after a full jury trial. *Lafler*, 132 S.Ct. at 1383. The Supreme Court applied the two-pronged, *Strickland v. Washington*, 466 U.S. 668 (1984), test for ineffective assistance of counsel in this situation and stated that a criminal defense attorney is ineffective when "but for" counsel's inaccurate legal advice there is a reasonable probability that the defendant "would have accepted the plea." *Id.* at 1385. The ruling in *Lafler* is not applicable to Petitioner's case because Petitioner accepted the prosecution's plea deal and the court sentenced him under that plea. Accordingly, *Lafler* does not justify equitable tolling in Petitioner's case.

In *Frye*, the defense counsel did not tell the defendant about formal plea offers from the prosecution and the offers lapsed. *Frye*, 132 S.Ct. at 1404. As a result, the defendant accepted a later plea deal that was much less favorable. *Id.* at 1404–05. The Supreme Court applied the *Strickland* test and held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea" to the defendant, and when defense counsel allows "the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." *Id.* at 1408. Here, Grondin communicated the prosecution's plea deal to Plaintiff and provided Plaintiff with advice regarding the plea deal. The trial court found that Petitioner knowingly, intelligently, and voluntarily agreed to the plea. (Doc. 20 Ex. AAA at 48–49). Therefore, the *Frye* decision is distinguishable from Petitioner's

case. Accordingly, neither *Lafler* nor *Frye* provide a basis for equitable tolling in Petitioner's case.

Moreover, even if *Lafler* or *Frye* was applicable to Petitioner's case, for equitable tolling of the statute of limitations to be available, Petitioner must show that some impediment to filing stood in Petitioner's way. Nothing about the United States Supreme Court deciding a case would be a prior impediment to filing that prevented Petitioner from timely filing his habeas petition. *See Pace*, 544 U.S. at 413. To hold otherwise would mean every "new" Supreme Court decision equitably restarts the AEDPA's statute of limitations for all defendants to whom the holding might apply.

Additionally, *Lafler* and *Frye* did not create a new constitutional right entitling Petitioner to the AEDPA alternative statute of limitations start date under Section 2244(d)(1)(C). For the alternative start date in 28 U.S.C. § 2244(d)(1)(C) to apply, the Supreme Court must recognize a new right and that right must be "made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). In both *Lafler* and *Frye* the Supreme Court only applied the *Strickland* test for ineffective assistance of counsel to a new situation; the Court did not create a new constitutional right. *See Buenrostro v. United States*, 697 F.3d 1137, 1140 (9th Cir. 2012) ("Because the Court in *Frye* and *Lafler* repeatedly noted its application of an established rule to the underlying facts, these cases did not break new ground or impose a new obligation on the State or Federal Government."). Moreover, even if *Lafler* or *Frye* did create a new right, the new right is not retroactive. Neither case contains express language regarding retroactivity and no subsequent case has given them retroactive effect. *See Tyler v. Cain*, 533 U.S. 656, 663 (2001).

**B.    Ineffective Assistance of Counsel in Post-Conviction Proceedings**

Petitioner argues that he is permitted equitable tolling, because his post-conviction attorney, Gail Natale, provided ineffective assistance of counsel. (Doc. 23 at 6). While recognizing that ineffective assistance of post-conviction counsel is not itself grounds for habeas relief, Petitioner asserts that it renders him eligible for equitable tolling under

1 *Holland*. (Doc. 23 at 6). Moreover, Petitioner contends that the Court is not prohibited from reviewing the merits of his habeas petition because *Martinez* states that a procedural default does not bar a federal court from hearing a habeas claim if counsel was ineffective in the initial review collateral proceeding. (*Id.*)

### 1. Petitioner's Reliance on *Holland*

Petitioner asserts that his post-conviction attorney, Gail Natale, prevented him from filing a pro per supplemental post-conviction relief petition, in which he would have asserted that his trial attorney, Michael Grondin, provided ineffective assistance counsel. (*Id.*) He also states that Natale lied to him and "was not willing to file any claim despite clear fact [sic] that [he] had more than a substantial claim." (*Id.*) Petitioner contends that according to *Holland*, "while § 2254(i) preclude[s] [him] . . . from relying on the ineffective assistance of his post-conviction attorney as 'grounds for relief' it does not stop [him] from using it to establish cause" for equitable tolling. (*Id.*) Petitioner argues that Natale's behavior is sufficient to warrant equitable tolling. (*Id.*)

In *Holland*, the petitioner wrote his post-conviction attorney numerous letters seeking important information about his case, but he never received a response from his attorney or any of the requested information. *Holland*, 560 U.S. at 653. The petitioner also attempted to remove his non-responsive attorney by repeatedly contacting state courts, their clerks, and the state bar association. *Id.* Additionally, he filed a pro se habeas petition on the same day he discovered that his limitations period under the AEDPA had expired due to his counsel's failings. *Id.* The Supreme Court opined that counsel's failures likely amounted to an "extraordinary circumstance" justifying equitable tolling, but the Court did not expressly rule on the issue. *Id.* at 653–54. However, the Court concluded that the petitioner satisfied the diligence requirement of equitable tolling. *Id.* at 653–54.

Here, though Natale was openly skeptical of Petitioner's chances of success in a post-conviction relief proceeding,[1] she provided Petitioner with all of the information

---

[1] In a letter to Petitioner dated May 17, 2007, Natale wrote "I am *not* your co-

about his case, responded to his letters, and informed him of his options despite not finding any viable issues to raise in a post-conviction relief petition. (Doc. 18 Exs. O, P, Q, R). However, even if Natale's behavior rose to an extraordinary circumstance justifying equitable tolling, Petitioner fails to satisfy the diligence requirement of equitable tolling. In 2006, Natale informed Petitioner that she could not find a viable issue for a post-conviction relief petition, but Petitioner could file a supplemental pro per petition raising any claim he wanted. (Doc. 18 Ex. O). Despite receiving several extensions from the court, Petitioner never filed a supplemental pro per petition. (Doc. 15 Ex. YY). Instead, he waited nearly six years after the state court denied his post-conviction relief petition to file the instant habeas petition. Accordingly, Natale's performance does not provide a basis for equitable tolling.

### 2. Petitioner's Reliance on *Martinez*

Petitioner argues that he is permitted equitable tolling because he was entitled to "competent counsel in post-collateral proceedings" pursuant to *Martinez*. However, *Martinez* applies only to excusing a procedural default or lack of exhaustion in state court. *Martinez*, 132 S.Ct. at 1315. In *Martinez*, the Court only held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320.

*Martinez* has no application to the statute of limitations in the AEDPA which governs Petitioner's filing in federal court. *Accord McKinnie v. Long*, 2013 WL 1890618, at *7–8 (C.D. Cal. Apr. 5, 2013) ("*Martinez* dealt solely with the state procedural default

---

counsel . . . . I am also not your law clerk, your gopher or your secretary. The only reason I have not withdrawn from representing you is because under *Lammie v. Barker* . . . I am required to remain on the case . . . ." (Doc. 18 Ex. Q). In the same letter she wrote "You very improvidently—but knowingly and voluntarily—pleaded guilty under an agreement that put you away for the rest of your life . . . . you now have buyer's remorse, but . . . there is not thing one [sic] you can do about it." (*Id.*) In a letter to Petitioner dated December 21, 2007, Natale stated that Petitioner "may file a Rule 32.9 petition for review to the court of appeals but that is likely to go nowhere." (Doc. 18 Ex. R).

- 12 -

1 doctrine, which is entirely different from the issue presented here of whether petitioner's claims are time barred under the AEDPA statute of limitations."); *see Moore v. Williams*, 2013 WL 271454, at *5 (D. Nev. Jan. 23, 2013) ("Petitioner has conflated the federal timeliness question with the issue of whether a claim in the federal petition is barred due to procedural default in the state court."). Accordingly, *Martinez* does not present a basis for equitable tolling.

### C. Petitioner's Constitutional Claims

In addition to Petitioner's arguments regarding equitable tolling, Petitioner raised two constitutional claims in his objections to the R&R. First, Petitioner asserts that he is entitled to habeas relief because his trial counsel provided ineffective assistance of counsel. (Doc. 23 at 2). Second, Petitioner argues that he is entitled to habeas relief because the police violated his Fourth Amendment rights when they allegedly conducted an unlawful search and seizure of Petitioner's property. (Doc. 23 at 3–4). However, the Court does not reach the merits of these claims because Petitioner has not established that he is entitled to equitable tolling of the AEDPA's statute of limitations. Therefore, Petitioner's constitutional claims are untimely.

## V. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the Report and Recommendation (Doc. 20) is accepted and adopted, and the objections (Doc. 23) are overruled. The Petition in this case is denied with prejudice, and the Clerk of the Court shall enter judgment accordingly.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**IT IS FURTHER ORDERED** that pursuant to Rule 11 of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court denies issuance of a Certificate of Appealability, because dismissal of the Petition is based on a plain procedural bar, and jurists of reason would not find this Court's procedural ruling debatable. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated this 23rd day of September, 2014.

*James A. Teilborg*
Senior United States District Judge